# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>LOWELL D. WELDON, et al.,<br>Defendants. / | CASE NO. 1:08-cv-01643-LJO-SMS<br>**ORDER DENYING THE DEFENDANTS' MOTIONS TO SET ASIDE THE DEFAULT JUDGMENT AND TO VOID THE DEFAULT JUDGMENT**<br>(Docs. 53, 54 & 60) |

Pending before the Court are three motions brought by Defendants Lowell D. and Bessie L. Weldon to set aside the default judgment against them.[1] This Court has reviewed the papers and has determined that this matter is suitable for decision without oral argument pursuant to Local Rule 78-230(h). Having considered all written materials submitted, the Court denies Defendants' motion.

## I. Procedural and Factual Background

On October 28, 2008, the Government filed a complaint to reduce to judgment federal tax assessments attributable to the tax years from 1997 through 2003 against Lowell D. Weldon and to foreclose tax liens on three parcels of real property owned by Weldon (Doc. 1). Defendant Bessie L. Weldon was named as a defendant pursuant to 26 U.S.C. § 7403(b) because of her community property interest in the real properties subject to the Government's liens. Although they attended the initial scheduling conference, Defendants never answered the complaint nor

[1] Defendant Midland Mortgage Company does not join in the motions.

participated thereafter, even though they were served with all court documents throughout the litigation. The Clerk entered default against Lowell D. Weldon and Bessie L. Weldon on April 10, 2009 (Doc. 30). The Default Judgment and Order of Foreclosure was entered March 30, 2010 (Doc. 52).

Defendants then filed both a motion to set aside judgment (Doc. 53) and a motion to alter or amend judgment (Doc. 54). Both motions sought additional time for Defendants to exhaust administrative remedies and revoked all power of attorney. On April 12, 2010, the Government filed its opposition to Defendants' motions to set aside the judgment (Doc. 55). On April 13, 2010, after reviewing Defendants' motions and the Government's opposition, this Court entered an order permitting Defendants to "reply to specific issues raised by Plaintiff's opposition" (Doc. 57). The Court warned: "Defendants are admonished that failure to comply with this motion may result in striking their motion" (Doc. 57). On April 28, 2010, Defendants filed yet another motion to set aside the default judgment, repeating their earlier arguments but failing to address the objections set forth in the Government's opposition (Doc. 60).

## II. Setting Aside Default Judgment

Defendants bring their motions under F.R.Civ.P. 59(e), which prescribes the time period within which a party must bring an action to alter or amend a judgment, but does not address motions to set aside default judgments. Motions to vacate default judgments are governed by F.R.Civ.P. 60(b). Defendants' motions do not fit nicely into any of the grounds for relief from a default judgment under F.R.Civ.P. 60(b), and having failed to identify the applicable rule, Defendants do not argue that any such grounds exist. Yet Defendants bear the burden of proving that good cause favors the vacating of the judgment. *TCI Group Life Ins. Plan v. Knoebber*. 244 F.3d 691, 696 (9th Cir. 2001)

Under the good-cause standard, "a district court may deny a motion to vacate a default judgment if: (1) the plaintiff would be prejudiced if the judgment is set aside, (2) defendant has no meritorious defense, or (3) the defendant's culpable conduct led to the default." *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000), *cert. denied*, 532 U.S. 1008 (2001). This test is disjunctive. *In re Hammer*, 940 F.2d 524, 525-26 (9th Cir.

1991). This means that a district court may deny the motion if any of the three factors is true. *Id.* at 526. Because all three factors are satisfied in this case, this Court will deny Defendants' motions.

**A. <u>No Meritorious Defense</u>**

Defendants' motions do not directly address the criteria for setting aside default judgments but advance frivolous arguments commonly espoused by tax protesters.[2] Defendants' failure to present a meritorious defense is a sufficient ground to deny Defendants' motions to set aside the default judgment against them. When a defendant presents no meritorious defense, reopening the judgment can only result in pointless delay. *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

Many of Defendants' allegations are nonsensical, such as their characterizing themselves as tax assessors, not taxpayers; declaring that 'there will be no summary judgments for plaintiff in this case for the duration;" and disavowing any legal presumption that "may be detrimental to The Weldon's interest and/or case." In particular, Defendants espouse two frivolous theories commonly employed by tax protesters: (1) declaring that the Internal Revenue Service ("IRS") is not a governmental entity, and (2) claiming that Defendants can "charge back or redeem" their tax liabilities against their personal value.

**1. <u>Private Corporation</u>**

Defendants frivolously contend that the IRS is not a government agency, only a private corporation without authority to enforce the Internal Revenue Code. They are wrong. *Young v. Internal Revenue Service*, 596 F.Supp. 141, 147 (N.D. Ind. 1984). "Like it or not, the Internal Revenue Code is the law." *Ryan v. Bilby*, 764 F.2d 1325, 1328 (9th Cir. 1985). *See also United States v. Fern*, 696 F.2d 1269, 1273 (11th Cir. 1983)("Clearly, the Internal Revenue Service is a 'department or agency' of the United States.").

---

[2] By advancing frivolous arguments, Defendants invite the imposition of sanctions under 28 U.S.C. § 1927 and the Court's inherent powers. Although the Government has not requested sanctions, Defendants are admonished that the advancement of arguments that lack a reasonable basis in law or fact and that have previously been rejected by this and other courts constitute sanctionable conduct. *See, e.g., Ryan*, 764 F.2d at1328-29 (imposing double costs on frivolous tax protester).

"[T]he Internal Revenue Service is organized to carry out the broad responsibilities of the Secretary of the Treasury under § 7801(a) of the 1954 Code for the administration and enforcement of the internal revenue laws." *Donaldson v. United States*, 400 U.S. 517, 534 (1971). The Secretary of the Treasury has full authority to administer and enforce the internal revenue laws and has the power to create an agency to enforce those laws. 26 U.S.C. § 7801; *Young*, 596 F.Supp. at 147. The IRS was created pursuant to this congressionally mandated power. Its head is the Commissioner of Internal Revenue, who is responsible to administer and supervise the execution and application of the internal revenue laws. 26 U.S.C. § 7803(a). The contention that the IRS is not a government agency of the United States is wholly frivolous. *Salman v. Department of Treasury–Internal Revenue Service*, 899 F. Supp. 471, 472 (D. Nev. 1995); *Young*, 596 F.Supp. at 152.

**2. <u>Redemption or Charge-Back</u>**

In multiple and confusing contentions, Defendants assert that they are the creditors, the holders in due course, and the real parties in interest in this case. The Government identifies these contentions as likely indicating that Defendants have espoused a tax protester theory known as "redemption" or "charge-back," which maintains that the taxpayer is entitled to funds held in an account identified by his name or social security number. According to the theory, as applied in the tax-protester context, the taxpayer is a creditor of the United States and holder in due course of these funds, which represent amounts that exceed the amounts necessary to discharge the taxpayer's federal tax liabilities. *See United States v. Palmer*, 2009 WL 1683172 at *1 (W.D.Wash. June 16, 2009)(Civil No. C08-5249 FDB). The theory is most fully explained in an Eighth Circuit opinion:

> According to the redemption theory, the United States went bankrupt when it rejected the gold standard in 1933 and thereafter covered the country's debt by converting the physical bodies of its citizens into assets.
>
> Followers of the redemption theory believe that each citizen has a "private side" and a "public side." The theory provides that the government owns each person's public side or "straw man" by holding title to each citizen's birth certificate. By filing UCC-1 financing statements and their birth certificates in a state that accepts such filings, followers of this theory believe they can "redeem" their birth certificates. Redemption theorists view the redeemed birth certificate as an asset on which they place a value of up to $2 million and assert the U.S.

> Treasury Department acts as a clearinghouse for the funds. Under this theory, they then create money orders and sight drafts drawn on their Treasury Direct Accounts to pay for goods and services.
>
> *United States v. Getzschman*, 81 Fed.Appx. 619, 620 (8th Cir. 2003).

Another well-detailed explanation of the theory, including its more sinister aspects, is set forth in *Bryant v. Washington Mutual Bank*, 524 F.Supp.2d 753, 758-60 (W.D.Va. 2007). *See also United States v. Saldana*, 427 F.3d 298, 302 (5th Cir.), *cert. denied*, 546 U.S. 1067 (2005) and 546 U.S. 1122 (2006) (noting the plaintiffs' use of a so-called redemption or charge-back process, which purportedly permits individuals to redeem money from the government for a variety of nonsensical reasons, including that the government has an account for each citizen that is linked to the citizen's birth certificate); *United States v. Waalee*, 133 Fed.Appx. 819, 822 n. 2 (3d Cir. 2005)("Redemption theory . . . appears to hold that a birth certificate is a negotiable instrument which the holder may redeem for value from the federal government. [Defendant] testified at trial that he understands redemption theory to rest on the premise that in 1933, Congress took the United States into bankruptcy, suspended the gold standard and adopted a paper standard, all in violation of the U.S. Constitution, which in turn means that all money became unlawful or "fiat" money; birth certificates then providing the backing for this fiat money."). *And see United States v. Prestonwood Properties, Inc.*, 2001 WL 1076125 (N.D.Tex. 2001) (in which the defendant created frivolous UCC filings purportedly creating a security interest in his birth certificate and similar governmental documents of identity).

Courts have characterized the redemption theory as "implausible," "clearly nonsense," "convoluted," and "peculiar." *Bryant v. Washington Mutual Bank*, 524 F.Supp.2d 753, 760 (W.D.Va. 2007), *aff'd*, 282 Fed.Appx. 260 (4th Cir. 2008); *United States v. Allison*, 264 Fed.Appx. 450, 452 (5th Cir. 2008). In the federal income tax context, the redemption theory is "nonsensical and soundly rejected in this and all other jurisdictions." *Palmer*, 2009 WL 1683172 at *1. This Court agrees that the redemption theory is without merit.

///

///

///

**B. Defendants' Culpable Conduct**

Defendants' failure to present a meritorious defense is sufficient in itself to deny Defendants' motion to set aside the default judgment against them, but Defendants also demonstrate culpable conduct that weighs against setting the judgment aside.

A defendant who has received actual or constructive notice of an action's filing but fails to answer is traditionally considered to have demonstrated culpable conduct. *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005). In the course of evaluating culpability in the setting aside of a default judgment, however, courts usually consider a defendant's conduct to have been culpable if he received notice and *intentionally* failed to answer. *TCI Group Life*, 244 F.3d at 696-97. Intentional failure exists when an actor has proceeded with knowledge of the likely consequences of his course of action. *Id.* at 697. Examples of intentional failure to answer include defendants who refuse to answer intending to take advantage of the opposing party, to interfere with judicial decision making, or to manipulate the legal process. *Id.*

Defendants indisputably had notice of this lawsuit: they were served with the complaint (Docs. 8 & 9) and attended the initial scheduling conference (Doc. 22) but never answered the complaint or took any other action until the Court entered the default judgment against them. At the last minute, Defendants twice moved to set aside the default judgment, setting forth multiple blatant untruths and tax-protester theories but failing to address the factors relevant to setting aside a default judgment (Docs. 53 & 54). Even after the Court provided an opportunity for Defendants to address the relevant factors and admonished Defendants of the necessity of addressing the issues that the Government raised, Defendants repeated the same frivolous assertions and tax-protester rhetoric. As such, Defendants have demonstrated culpable conduct that, of itself, is sufficient grounds for this Court to refuse to set aside the default judgment against them.

**C. Prejudice**

Finally, granting Defendants' motions to set aside the default judgment would prejudice the Government. "To be prejudicial, the setting aside of a judgment must result in greater harm

than simply delaying resolution of the case." *TCI Group Life*, 244 F. 3d at 701; *Bateman v. United States Postal Service,* 231 F.3d 1220, 1224-25 (9th Cir. 2000). This is because, if Defendants had not defaulted, the government would have had to litigate the merits of its claims in any event. *TCI Group Life*, 244 F. 3d at 701. "[T]he standard is whether the [plaintiff's] ability to pursue his claim will be hindered." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (*per curiam*). For example, "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996). The Government forcefully argues that, if the default judgment is re-opened, Defendants will continue to evade payment of their taxes for the years 1997 through 2003, producing fraudulent materials and presenting frivolous tax-protester arguments. Defendants' behavior in the course of this litigation and the obvious falsehoods and frivolous assertions set forth in their three motions to set aside the default judgment support the Government's arguments.

## III. Conclusion and Order

For the foregoing reasons, this Court hereby **DENIES** Defendants' three motions to set aside the default judgment against them in this case.

IT IS SO ORDERED.

**Dated: May 4, 2010** **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE